IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


MARK D. MOORE,                              Case. No. 6:11-cv-06306-AA

       Plaintiff,                           OPINION AND ORDER

    v.

COUNTRY MUTUAL INSURANCE
COMPANY,

       Defendant.

_____

Clinton L. Tapper
R. Scott Taylor
Taylor & Tapper
400 E 2nd, Suite 103
Eugene, Oregon 97401
    Attorneys for plaintiff

Daniel E. Thenell
Jillian M. Hinman
Thenell Law Group, P.C.
12909 SW 68th Parkway, Suite 320
Portland, Oregon 97223
    Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Mark D. Moore moves for summary judgment, pursuant to Fed. R. Civ. P. 56, on his breach of contract claim against defendant Country Mutual Insurance Company. Plaintiff also moves for summary judgment on defendant's affirmative defenses. For the reasons set forth below, plaintiff's motion is denied.

### BACKGROUND

Plaintiff owns a commercial property located at 633 Kane Street in Roseburg, Oregon (the "Property"). On July 10, 2009, plaintiff obtained a business owners coverage insurance policy with defendant. The Policy covered damage to or loss of the Property, loss of business income, and liability and medical expenses related to the Property. On June 18, 2010, the Property was damaged in a fire. On June 21, 2010, plaintiff filed an insurance claim with defendant seeking compensation for damages arising from that fire. Defendant immediately began investigating plaintiff's claim.

Ryan Fields ("Mr. Fields"), of ORCA Fire Investigation, was retained by defendant to determine the cause and origin of the fire. On June 22, 2010, Mr. Fields inspected the Property. During the course of his initial investigation, Mr. Fields removed an electrical outlet damaged in the fire, and the associated wiring, for further forensic analysis.

On July 7, 2010, as part of the ongoing investigation, recorded statements were obtained from plaintiff, plaintiff's ex-girlfriend Laurie Lee Boyle("Ms. Boyle"), and Country Mutual Insurance Agent Lisa Simmons ("Ms. Simmons"). In his recorded

Page 2 - OPINION AND ORDER

statement, plaintiff described his poor credit, including many loans in various states of delinquency. Plaintiff also reported that he was in California at the time of the fire, having departed on Thursday, July 17, 2010, at 2:00 p.m. He learned about the fire by telephone call on Friday, July 18, 2010, at 8:35 p.m.

The information gained from plaintiff's recorded statement conflicted with information gathered from other sources, which prompted further investigation by defendant to determine whether a covered loss occurred at the Property. Specifically, defendant suspected that plaintiff may have played a role in causing the fire. As such, defendant retained CASE Forensics to provide a laboratory examination of the evidence collected by Mr. Fields; CASE Forensics' representatives are electrical and mechanical engineers. As part of its review, CASE Forensics determined that the branch circuit wiring and duplex outlet collected by Mr. Fields were not the point of origin of the fire. Rather, CASE Forensics eliminated electrical components as the fire's ignition source.

On October 26, 2010, defendant advised plaintiff that it was exercising its contractual right to conduct an examination under oath ("EUO"). On November 8, 2010, plaintiff's EUO was commenced; it was not concluded on that date because defendant requested additional documents. Plaintiff never completed his EUO thereafter. On November 29, 2010, defendant requested plaintiff's computers for analysis, as discussed during the EUO. Plaintiff did not respond to this request.

On December 7, 2010, plaintiff sought a copy of the cause and

Page 3 - OPINION AND ORDER

origin report prepared by Mr. Fields and provided defendant with a draft complaint. On December 14, 2010, defendant responded to plaintiff by advising him of the ongoing status of his claim investigation. At that time, defendant again asked for additional documents regarding plaintiff's claim and reiterated its request to perform an analysis of plaintiff's computers. Defendant also acknowledged receipt of plaintiff's draft complaint, but stated that it was unable to make a coverage determination until receiving additional information.

On January 14, 2011, plaintiff again solicited a copy of the cause and origin report while refusing to comply with defendant's requests. Plaintiff explained, however, that "unless this case is an arson, it makes no sense to request, nor to provide, the information outlined" in the prior communications. Thenell Decl. Ex. I. Plaintiff clarified that, if defendant's expert opined the fire was intentionally set, he would agree to cooperate with the investigation and produce the requested information.

On February 2, 2011, Mr. Fields issued a cause and origin report, which eliminated all accidental causes for the fire. The report concluded that the fire was "more likely than not an intentional act." Id. at Ex. K. On February 9, 2011, defendant notified plaintiff that it would provide a copy of the cause and origin report and reiterated its inquiry regarding the documents outlined in previous correspondences. On February 25, 2011, defendant mailed the cause and origin report to plaintiff, along with several requests for additional information. Because plaintiff

refused to comply, defendant repeatedly asked for documents and computer analysis from March 25, 2011 through August 19, 2011.

On August 24, 2011, plaintiff finally responded to defendant's requests by providing a comprehensive recapitulation of the parties correspondence and the documents produced. On September 16, 2011, defendant acknowledged receipt of plaintiff's correspondence and stated that no coverage determination had been made.

On September 28, 2011, plaintiff filed a complaint in this Court, alleging a claim for breach of contract. After initiating this litigation, the parties engaged in discovery. On October 30, 2012, the deposition of Ms. Boyle was taken. Ms. Boyle testified about numerous discussions with plaintiff, wherein plaintiff expressed both the desire and the method by which he would set fire to the Property. According to Ms. Boyle, plaintiff was deeply in debt and wanted to collect the insurance proceeds from the fire, but would make sure he was out of town when the fire was ignited so as not to cause suspicion. Ms. Boyle also stated that, after her relationship with plaintiff ended, she expressed concern about the potential for arson to Ms. Simmons.

During her deposition, Ms. Simmons confirmed that Ms. Boyle contacted her regarding the possibility of plaintiff setting fire to the Property, although she did not report her conversation to anyone else or make a note of it in plaintiff's file. On May 8, 2013, plaintiff filed a motion for summary judgment.

## STANDARD

Summary judgment is appropriate if the pleadings, depositions,

Page 5 - OPINION AND ORDER

answers to interrogatories, and admissions on file, together with the affidavits, if any, "show that there is no genuine dispute as to any material fact and that the [moving party] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

## DISCUSSION

## I. Preliminary Matters

Plaintiff raises two evidentiary objections in his reply brief. See Pl.'s Reply to Mot. Summ. J. 7; see also LR 56-1. First,

Page 6 - OPINION AND ORDER

plaintiff argues that the deposition testimony of Ms. Simmons should be excluded as hearsay. This objection, however, is moot because the Court did not rely on this evidence in deciding plaintiff's motion. See Perez-Denison v. Kaiser Found. Health Plan of the N.W., 868 F.Supp.2d 1065, 1088-89 (9th Cir. 2012).

Second, plaintiff alleges that the deposition testimony of Ms. Boyle is unreliable because she is a biased witness. According to plaintiff, Ms. Boyle's bias stems from their "rancorous breakup" and the fact that Ms. Boyle is currently suing him for $64,000 in an unrelated action. Pl.'s Reply to Mot. Summ. J. 7; see also Moore Supp. Decl. Ex. 13. Nevertheless, plaintiff concedes that Ms. Boyle's testimony is admissible, even if biased. See Pl.'s Reply to Mot. Summ. J. 7-8. Evidence of bias is generally admissible because "[a] successful showing of bias on the part of a witness would have the tendency to make the facts to which he testified less probable in the eyes of the jury than it would be without such testimony." United States v. Abel, 469 U.S. 45, 50 (1984); Fed. R. Evid. 401. Further, a successful showing of bias merely goes to the weight of the evidence as determined by the jury. Able, 469 U.S. at 54. This Court, however, cannot make "[c]redibility determinations or weigh the evidence" at this stage in the proceedings. See Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 150 (2000). Further, the Court did not rely exclusively on Ms. Boyle's testimony in making its summary judgment determination. For these reasons, plaintiff's evidentiary objections are denied.

II. Breach of Contract Claim

To prove a claim for breach of contract, the plaintiff must establish "the existence of a contract, 'its relevant terms, plaintiff's full performance and lack of breach and defendant's breach resulting in damage to plaintiff.'" Slover v. Or. State Bd. of Clinical Soc. Workers, 144 Or.App. 565, 570, 927 P.2d 1098 (1996) (internal quotation omitted)). Thus, summary judgment is inappropriate on a breach of contract claim where the plaintiff fails to demonstrate his full performance or lack of breach. See Celotex, 477 U.S. at 323; see also Vega v. Farmers Ins. Co. of Or., 323 Or. 291, 296, 918 P.2d 95 (1996) (internal citation omitted)).

It is undisputed that an insurance contract exists between plaintiff and defendant. See Pl.'s Mem. in Supp. Mot. Summ. J. 3; Def's Resp. to Mot. Summ. J. 2. As such, the resolution of plaintiff's motion initially hinges on the second and third elements of a breach of contract claim—i.e. the policy terms and plaintiff's full performance/lack of breach.

A. Plaintiff's Full Performance/Lack of Breach Under the Terms of the Policy

The parties' insurance policy specifies that, in the event of a loss, plaintiff was required to cooperate in the investigation of his claim. Tapper Decl. Ex. 3, at 43. Further, the policy required plaintiff's full compliance with all terms of the contract prior to initiating legal action against defendant. Id. "[F]ailure by the insured to cooperate with the insurer is a breach of the contract, and, if prejudice to the insurer is proven, amounts to a defense

that will relieve the insurer of its duties under the policy."
<u>Johnson v. Doughty</u>, 236 Or. 78, 80, 385 P.2d 760 (1963).

The record reveals that plaintiff may have failed to cooperate
with the investigation. First, plaintiff did not complete the EUO
as required under the policy. Thenell Decl. Ex. S. Plaintiff also
refused to respond to defendant's request for information or
provide defendant with certain documents necessary to the
investigation. <u>Id.</u> at Exs. D-O. Nonetheless, plaintiff contends
that he may not have been required to personally produce such
documents because he signed a release form early on in the
investigation that gave defendant access to his personal and
financial records. Tapper Decl. Ex. 8.

Thus, disputed issues of material fact exist as to whether
plaintiff cooperated with the investigation and, by extension,
fully performed under the terms of the contract. As such,
plaintiff's motion is denied.

<u>B. Defendant's Alleged Breach</u>

Even assuming that plaintiff established the elements of a
breach of contract claim, his motion is denied. An insurer breaches
its contract with an insured when it wrongfully denies a claim for
compensation under the contract, thereby breaking its promise to
pay certain benefits. <u>Vega</u>, 322 Or. at 296. While plaintiff fails
to address this issue, the Court notes that his claim was never
actually denied by defendant. <u>See generally</u> Pl.'s Mem in Supp. Mot.
Summ. J; Pl.'s Reply to Mot. Summ. J; Def.'s Resp. to Mot. Summ. J.
Rather, defendant was still investigating plaintiff's claim and had

Page 9 - OPINION AND ORDER

yet to make a coverage determination when plaintiff filed suit.

The Court acknowledges that there may be circumstances under which an insured may properly initiate a breach of contract claim prior to being formally denied coverage. For instance, a plaintiff may file suit before an insurer has denied his or her claim when an insurer has unreasonably delayed in making a coverage determination. See Or. Rev. Stat. § 746.230(e). While Oregon case law does not clearly define what constitutes a "reasonable time," jurisdictions with analogous statutes have addressed this issue and hold that "[t]here can be no 'unreasonable delay' until the insurer receives adequate information to process the claim." Globe Indem. Co. v. Superior Ct., 6 Cal.App.4th 725, 731, 8 Cal.Rptr.2d 251 (1992) (citation omitted). Here, like Globe, plaintiff never concluded his EUO and significantly delayed defendant's investigation by refusing to comply with its requests for information. Id. at 727-28; see also Thenell Decl. Ex. I, at 2; id. at Ex. S, at 2. After over six months of back and forth communication, plaintiff eventually complied with the bulk of defendant's requests; however, after so complying, plaintiff did not give defendant an opportunity to process his claim but instead filed suit. Thenell Decl. Exs. D-E; Tapper Decl. Exs. 12, 16. Thus, based on an independent review of the record, the Court cannot conclude that defendant unreasonably delayed in making a coverage determination. Plaintiff's claim was therefore premature.

Even assuming, however, that defendant officially denied plaintiff's claim, the contract would only be breached if this

denial was wrongful. <u>Pritchard v. Regence Bluecross Blueshield</u>, 225 Or.App. 455, 460, 201 P.3d 290 (2009), <u>rev. denied</u>, 346 Or. 184, 206 P.3d 1058 (2009). If the defendant can demonstrate that the loss fit within a contractual exclusion, then it is not liable under the contract. <u>See ZRZ Realty Co. v. Beneficial Fire & Cas. Ins. Co.</u>, 349 Or. 117, 129, 241 P.3d 710 (2010).

The insurance policy at issue excludes coverage for dishonest or criminal acts by the insured or someone acting in collusion with the insured. Moore Decl. Ex. 3, at 40. It is undisputed that this exclusion includes arson. <u>See</u> Pl.'s Mem. in Supp. Mot. Summ. J. 11-13; Def.'s Resp. to Mot. Summ. J. 13. To establish the affirmative defense of arson, an insurer may present direct or circumstantial evidence and, if necessary, may rely entirely on circumstantial evidence. <u>MLM Prop., L.L.C. v. Country Cas. Ins. Co.</u>, 2009 WL 3595909, *4 (D.Or. Oct. 30, 2009).

Plaintiff testified that he could not have committed arson because he was in California at the time of the fire. Tapper Decl. Exhibits Pt. 2 (doc. 37-2), at 75[1]; <u>id.</u> at Ex. 2. Conversely, defendant presented evidence demonstrating plaintiff's possible motives and premeditation for committing arson, as well as the official cause and origin report ruling out all accidental causes of the fire. Thenell Decl. Ex. P, at 3-6; <u>id.</u> at Ex. L, at 3-10; <u>id.</u> at Ex. A.

---

[1] To the extent that plaintiff's filings include combined, unmarked, and/or unnumbered exhibits, the Court refers to the page number assigned in the docket.

Viewing this evidence in the light most favorable to defendant, a reasonable jury could conclude that the Property damage at issue was excluded under the parties' policy. See MLM Prop., 2009 WL 3595909 at *4 (summary judgment inappropriate on breach of insurance contract claim where two investigators determined the fire to be incendiary in origin and evidence of insured's financial trouble showed motive to commit arson); W. Am. Ins. Co. v. Hernandez, 669 F.Supp.2d 1211, 1219 (D.Or. 2009) (summary judgment inappropriate on breach of insurance contract claim when insured's alibi for arson was disputed by other evidence). Accordingly, because genuine issues of material fact exist that preclude summary judgment on plaintiff's breach of contract claim, the Court declines to address defendant's affirmative defenses at this stage in the proceedings. Therefore, plaintiff's motion is denied.

## CONCLUSION

Plaintiff's motion for summary judgment (doc. 35) is DENIED. Plaintiff's request for oral argument is DENIED as unnecessary.

IT IS SO ORDERED.

Dated this 17 of August 2013.

_____
Ann Aiken
United States District Judge