IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARK D. MOORE,

    Plaintiff,

  v.

COUNTRY MUTUAL INSURANCE COMPANY,

    Defendant.

Case. No. 6:11-cv-06306-AA
OPINION AND ORDER

Clinton L. Tapper
R. Scott Taylor
Taylor & Tapper
400 E 2nd, Suite 103
Eugene, Oregon 97401
    Attorneys for plaintiff

Daniel E. Thenell
Jillian M. Hinman
Thenell Law Group, PC
12909 SW 68th Parkway, Suite 320
Portland, Oregon 97223
    Attorneys for defendant

AIKEN, Chief Judge:

Page 1 - OPINION AND ORDER

Defendant Country Mutual Insurance Company moves to exclude plaintiff Mark Moore's expert witness, Donald Miller. Plaintiff also moves to exclude defendant's expert witness, Ryan Fields. For the reasons set forth below, the parties' motions are denied.

## BACKGROUND

Plaintiff owns a commercial property located at 633 Kane Street in Roseburg, Oregon (the "Property"). On July 10, 2009, plaintiff obtained a business owners coverage insurance policy with defendant. The policy covered damage to or loss of the Property, loss of business income, and liability and medical expenses related to the Property. On June 18, 2010, the Property was damaged in a fire. On June 21, 2010, plaintiff filed an insurance claim with defendant seeking compensation for damages arising from that fire.

Mr. Fields, of ORCA Fire Investigation, was retained by defendant to determine the cause and origin of the fire. On June 22, 2010, Mr. Fields inspected the Property. During the course of his initial investigation, Mr. Fields removed an electrical outlet damaged in the fire, and the associated wiring, for further forensic analysis.

Defendant then hired CASE Forensics (electrical and mechanical engineers) to provide a laboratory examination of the evidence collected by Mr. Fields. CASE Forensics determined that the branch circuit wiring and duplex outlet collected by Mr. Fields were not the fire's point of origin and, in fact, eliminated electrical

components as the fire's ignition source.

On October 26, 2010, defendant advised plaintiff that it was exercising its contractual right to conduct an examination under oath ("EUO"). On November 8, 2010, Plaintiff's EUO was commenced but not concluded because defendant requested additional documents. Plaintiff never completed his EUO thereafter. On November 29, 2010, defendant requested plaintiff's computers for analysis, as discussed during the EUO. Plaintiff did not respond to this request. Defendant again requested additional documents in December 2010.

On February 2, 2011, Mr. Fields issued a cause and origin report, which eliminated all accidental causes for the fire. The report concluded that the fire was more likely than not an intentional act. On February 9, 2011, defendant notified plaintiff that it would provide a copy of the cause and origin report, and reiterated its inquiry regarding the documents outlined in previous correspondences. On February 25, 2011, defendant mailed the cause and origin report to plaintiff, along with several requests for additional information. From March 25, 2011, through August 19, 2011, defendant repeatedly asked for documents and computer analysis.

On August 24, 2011, plaintiff finally responded to defendant's requests by providing a comprehensive recapitulation of the parties correspondence and the documents produced. On September 16, 2011,

defendant acknowledged receipt of plaintiff's correspondence and stated that no coverage determination had been made.

On September 28, 2011, plaintiff filed a complaint in this Court, alleging a claim for breach of contract due to defendant's failure to cover damage to the Property caused by the fire. On August 29, 2012, plaintiff retained Mr. Miller, a private fire investigator, to determine the cause of the fire. On November 30, 2012, Mr. Miller inspected the Property. During his investigation, Mr. Miller reviewed the fire department investigator's and Mr. Fields's reports, examined the wiring collected by Mr. Fields, and interviewed plaintiff. Mr. Miller concluded that fire was caused by an accidental electrical malfunction.

On August 17, 2013, the Court denied plaintiff's motion for summary judgment. On December 11, 2013, defendant moved to exclude Mr. Miller as an expert witness. On January 17, 2014, plaintiff moved to exclude Mr. Fields as an expert witness.

## STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. A qualified expert may testify if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; see also Daubert v. Merrell Dow Pharm., Inc.,

509 U.S. 579, 591-95 (1993). The party seeking to introduce expert evidence must prove its admissibility by a preponderance. Daubert, 509 U.S. at 592 n.10.

Daubert identifies four factors that the court may consider in assessing reliability, including whether a theory or technique: (1) can be and has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error; and (4) enjoys general acceptance within the "relevant scientific community." Id. at 593-94. These factors, however, "do not constitute a 'definitive checklist or test.'" Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999) (quoting Daubert, 509 U.S. at 593). Rather, these factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise," and the subject matter of the proffered testimony. Id. (citation and internal quotations omitted).

## DISCUSSION

Plaintiff moves to exclude Mr. Fields as a witness because his testimony is unreliable. Defendant moves to exclude Mr. Miller's testimony because he lacks the requisite qualifications and has not provided reliable testimony. As such, the parties' objections go to the weight of the evidence as opposed to admissibility. See United States v. Garcia, 7 F.3d 885, 890 (9th Cir. 1993) (expert's lack of particularized expertise goes to the weight of that

testimony, not admissibility). Assessing the weight of expert evidence, however, is within the province of the jury. See Humetrix, Inc., v. Gemplus S.C.A., 268 F.3d 910, 919-20 (9th Cir. 2001).

I. Mr. Fields

Mr. Fields produced his summary report on December 19, 2010. Tapper Decl. Ex. 2, at 1. Mr. Fields eliminated potential ignition sources, indicating that a handheld flame was the ignition source. Id. He found that naturally-available fuels within the wall space were likely the first material ignited. Id. After consulting CASE Forensics, he eliminated the electrical wiring or outlet, within the wall, as the cause of the fire and ultimately concluded that the cause of the fire was "an intentional act by an unknown party." Id.

February 2, 2011, Mr. Fields produced his final report. Second Thenell. Decl. Ex. 2, at 1. He reiterated that the fire originated within the wall stud space in the northwest corner of the building and opined that an open flame to materials within the wall would ignite this type of fire. Id. at 7-8. Again, Mr. Fields concluded that the cause of the fire was likely an intentional act by an unknown party. Id. at 8.

Plaintiff argues that Mr. Fields's report and testimony is not reliable because it does not comply with the standards outlined in the National Fire Protection Association 921: Guide for Fire and

Page 6 - OPINION AND ORDER

Explosion Investigations ("NFPA 921"). NFPA 921 is accepted as a reliable method for fire investigations. See, e.g., Fireman's Fund Ins. Co. v. Canon U.S.A., Inc., 394 F.3d 1054, 1058-59 (8th Cir. 2005). Expert testimony, however, is not automatically excluded for deviating from the methodology set forth in NFPA 921. See Schlesinger v. United States, 898 F.Supp.2d 489, 504-05 (E.D.N.Y. 2012).

First, plaintiff asserts that Mr. Fields's report is unreliable because his determination that the fire was an "intentional act by an unknown party" differs from the definition of an incendiary fire found in NFPA 921. The 2008 edition[1] of NFPA 921 defines "incendiary fire cause" as a "fire that is intentionally ignited under circumstances in which the person knows that the fire should not be ignited." NFPA 921 § 3.3.99 (2008); see also NFPA 921 § 3.3.103 (2011) (same). Thus, NFPA 921 does not require an investigator, who has classified a fire as incendiary, to know the identity of the person who ignited the fire. Accordingly, the fact that Mr. Miller determined that the fire was ignited by an unknown party is not inconsistent with NFPA 921.

Plaintiff next argues that Mr. Fields's report is unreliable because he conducted a negative corpus investigation. The 2008

---

[1] Mr. Fields began his investigation in 2010 and produced his final report in 2011. The 2008 and 2011 NFPA 921 editions were presumably available to Mr. Fields during this time. Accordingly, the Court examines both editions in regard to Mr. Fields's testimony.

Page 7 - OPINION AND ORDER

edition of NFPA 921 sets forth:

> when the origin of a fire is clearly defined, it may be possible to make a credible determination regarding the cause of the fire, even when there is no physical evidence of the ignition source identified after the fire . . . through the testing of alternate hypotheses involving other potential ignition sources, provided that the conclusion regarding the remaining ignition source is consistent with all known facts. A clearly defined origin exists when it is known conclusively to the exclusion of all other potential origins . . . The positive identification of the origin is the most significant factor in determining whether the process of elimination is appropriate.

NFPA 921 § 18.2.1 (2008). Section 18.2.5 further states:

> [t]he "elimination of all accidental causes" to reach a conclusion that a fire was incendiary is a finding that can rarely be justified scientifically, using only physical data; however, the "elimination of all causes other than the application of an open flame" is a finding that may be justified in limited circumstances, where the area of origin is clearly defined and all other potential heat sources at the origin can be examined and credibly eliminated. It is recognized that in cases where a fire is ignited by the application of an open flame, there may be no evidence of the ignition source remaining.

NFPA 921 § 18.2.5 (2008); see also NFPA 921 § 18.5.3 (2008).

The 2011 edition of NFPA 921 provides:

> [n]egative corpus has typically been used in classifying fires as incendiary . . . This process is not consistent with the Scientific Method, is inappropriate, and should not be used because it generates un-testable hypotheses, and may result in incorrect determinations of the ignition source and first fuel ignited. Any hypothesis formulated for the causal factors (e.g., first fuel, ignition source, and ignition sequence), must be based on facts. Those facts are derived from evidence, observations, calculations, experiments, and the laws of science.

NFPA 921 § 18.6.5 (2011). Yet the 2011 edition makes clear that

"[t]here are . . . occasions when there is no physical evidence of the ignition source, but an ignition sequence can be hypothesized based on other data." NFPA 921 § 18.1.3 (2011).

In Mr. Fields's December 2010 summary report, he determined the fire's origin, eliminated causes, and made findings. Notably, Mr. Fields found that the "elimination of other potential heat sources indicates the heat source was a hand held flame which was removed from the scene by the perpetrator." Tapper Decl. Ex. 2, at 1. Mr. Fields's final report, dated February 2011, found no physical evidence of the ignition source and accordingly hypothesized as to the ignition sequence based on other data, including the extent of the fire damage, the fire patterns, and CASE Forensics' conclusions. Therefore, Mr. Fields's reports do not deviate from the 2008 or 2011 editions of NFPA 921.

Finally, plaintiff argues that Mr. Fields's report is unreliable because he improperly relied on an unrelated fire to bolster his hypothesis. The NFPA 921 states that if "there has been a previous fire in the building, care should be taken not to confuse earlier damage with a multiple fire situation." NFPA 921 § 22.2.1.5 (2008); see also NFPA 921 § 22.2.1.5 (2011) (same). Mr. Fields did not incorporate the damage resulting from the first fire into his evaluation of the damage of the second fire. Tapper Decl. Ex. 4, at 13-15. Rather, Mr. Fields testified that he considered the first fire as a significant circumstance in concluding that the

Page 9 - OPINION AND ORDER

fire at issue was an intentional act. Id. Mr. Fields thus did not confuse the damage resulting from the two respective fires in violation of NFPA 921.

In sum, after reviewing Mr. Fields's report and deposition, the Court finds that his testimony is based on sufficient facts and data, and is helpful to the trier of fact. As such, Mr. Fields's testimony is admissible.

II. Mr. Miller

Mr. Miller produced his initial report on December 5, 2012. First Thenell Decl. Ex. 1, at 1. Mr. Miller's opinion was based on an interview with plaintiff, a review of the previous fire reports, a visual inspection "within a secure clear faced evidence envelope" of the electrical wiring removed by Mr. Fields and analyzed by CASE Forensics, and an on-site assessment, performed over two years after the fire. Id. at 2-17. He found that the fire originated in a room in the northwest corner of the building, within the wall stud space. Id. at 2. He determined that the ignition source for the fire was an electrical malfunction, specifically an electrical shorting within the wall. Id. Mr. Miller was unable to determine the first material ignited, but nonetheless concluded that the cause of the fire was accidental. Id.

A. Qualification

Defendant argues that Mr. Miller lacks sufficient specialized knowledge qualifying him to evaluate electrical systems. Rule 702

"contemplates a broad conception of expert qualifications" and is "phrased and intended to embrace more than a narrow definition of qualified expert." Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1015 (9th Cir. 2004) (citations and internal quotations omitted). Only a "minimal foundation of knowledge, skill, and experience" is required. Id. at 1016 (citation and internal quotations omitted).

Mr. Miller attended Lane Community College from 1970 to 1972 studying Electronic Theory. First Thenell Decl. Ex. 2, at 1. Moreover, through 2001, he continued taking fire science classes at Western Oregon State College and several community colleges. Id. Mr. Miller has also completed hours of training in fire-related subjects, such as critical thinking and analytical techniques for credible origin determination, advanced fire investigation for electrical fires, fire reconstruction, and application of fire dynamics using the scientific method. Id. at 3-4. Additionally, Mr. Miller worked as a fire service member for the Lane Fire District and the Office of Oregon State Fire Marshal from 1972 until 2001, when he retired from the position of Deputy State Fire Marshal. Id. at 2. He currently works as a part-time investigator for G4S Compliance & Investigations, in addition to owning his own fire investigation service. Id.

After reviewing Mr. Miller's report and credentials, the Court finds that Mr. Miller is qualified to render an expert opinion

concerning the fire.

B.   Reliability

Defendant argues that Mr. Miller's opinion is not reliable due to insufficient facts or data and does not comply with the standards outlined in NFPA 921. As discussed above, NFPA 921 is a reliable method for fire investigation, but an expert is not automatically excluded for deviating from the outlined procedures.

Defendant first argues that Mr. Miller did not collect and review all the relevant facts and data as required by NFPA 921. Specifically, defendant asserts that Mr. Miller's report and testimony are not reliable because he did not review the fire department investigator's deposition, witnesses' statements and depositions, and plaintiff's deposition. NFPA 921 states that "[f]acts about the fire incident are now collected by observation, experiment, or other direct data-gathering means." NFPA 921 § 4.3.3 (2011).[2] Furthermore, this guide provides that fire investigation may include a wide variety of tasks, including a scene inspection and review and analysis of the investigations of others. NFPA 921 § 4.4.3.2 (2011).

Thus, contrary to defendant's assertion, neither section requires an investigator to collect and review all possible evidence. Mr. Miller reviewed Mr. Fields's and the fire department

---

[2] The 2011 edition of NFPA 921 was presumably available during and relevant to Mr. Miller's 2012 investigation.

Page 12 - OPINION AND ORDER

investigator's reports. First Thenell Decl. Ex. 1, at 1-8. He also physically examined the fire scene. <u>Id.</u> at 5-8. Mr. Miller's investigation included several tasks specified in NFPA 921 section 4.4.3.2. In sum, Mr. Miller adequately complied with the relevant NFPA 921 procedures.

Defendant also argues that Mr. Miller failed to list and discuss each of his hypotheses on the cause and origin of the fire in his report or notes. NFPA 921 articulates, in relevant part:

> hypotheses should be based solely on the empirical data that the investigator has collected through observation and then developed into explanations for the event, which are based upon the investigator's knowledge, training, experience, and expertise.

NFPA 921 § 4.3.5 (2011). Contrary to defendant's assertion, NFPA 921 does not require investigators to list and discuss every hypothesis. Mr. Miller testified that he went through each hypothesis mentally and listed, in writing, his ultimate theory as to the cause of the fire. First Thenell Decl. Ex. 3, at 20-21. That is sufficient.

Defendant next argues that Mr. Miller failed to comply with NFPA 921 because he did not consult a qualified individual to interpret the electrical evidence nor does he possess the requisite credentials. NFPA 921 explains that "[i]f the investigator lacks expertise to properly attribute meaning to a piece of data, then assistance should be sought." NFPA 921 § 4.3.4 (2011). As discussed above, Mr. Miller's credentials are sufficient - he was

Page 13 - OPINION AND ORDER

educated in electrical fires and is qualified based on this training and his experience. Accordingly, he was not required to seek assistance from another qualified individual.

Finally, defendant argues that Mr. Miller's report is unreliable because of the amount of time that elapsed between the fire and his investigation. NFPA 921 recognizes that "in practice, not every scene is available at the time of the assignment." NFPA 921 § 4.4.3.3 (2011). Thus, "[t]he use of previously collected data from a properly documented scene can be used successfully in an analysis of the incident to reach valid conclusions through the appropriate use of the scientific method." Id.

During his investigation, Mr. Miller had access to Mr. Fields's report, the fire department investigator's report, the electrical component removed from the scene by Mr. Miller, and the scene of the fire. First Thenell Decl. Ex. 1. Consistent with NFPA 921, Mr. Miller's reliance on data previously collected by Mr. Fields and the fire department, in addition to his own examination of the scene, does not undermine the reliability of his conclusions.

In sum, after reviewing Mr. Miller's report, credentials, and deposition, the Court finds that his testimony is based on adequate facts and data, and is helpful to the trier of fact. Therefore, Mr. Miller's testimony is admissible. To the extent the parties maintain that less weight should be afforded to these experts'

respective opinions, they will both have the opportunity to address this issue in future proceedings.  See Daubert, 509 U.S. at 596.

**CONCLUSION**

Defendant's motion to exclude plaintiff's expert witness (doc. 54) is DENIED.  Plaintiff's motion to exclude defendant's expert witness (doc. 62) is also DENIED.  Accordingly, the parties' requests for a Daubert hearing to determine the admissibility of this evidence are DENIED as unnecessary.

IT IS SO ORDERED.

Dated this 18th day of March 2014.

                              /s/ Ann Aiken
                              Ann Aiken
                       United States District Judge